IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:03-CV-204-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NORTH CAROLINA'S ORIGINAL ) | |
| COPY OF THE BILL OF RIGHTS, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on remand from the Fourth Circuit Court of Appeals. *See In re Matthews*, 395 F.3d 477 (4th Cir. 2005). At a hearing on January 23, 2004, the undersigned entered a final judgment *in rem* ruling that the State of North Carolina is the lawful owner of North Carolina's original copy of the Bill of Rights ("Bill of Rights") and was entitled to its return.[1] One of the parties claiming an ownership interest in the Bill of Rights, Robert V. Matthews ("Matthews"), appealed. In an Order dated January 26, 2005, the Fourth Circuit found that because the United States had voluntarily dismissed the civil forfeiture action prior to this Court's ruling, the Court lacked jurisdiction to adjudicate ownership of the Bill of Rights. Therefore, the Fourth Circuit vacated the Court's judgment and remanded the matter for the Court to "restore the parties, as closely as possible, to the *status quo ante* as it determines that phrase to mean." *Id.* at 484. Recognizing the numerous factual questions surrounding the issue,

---

[1] The Court filed a written Order on February 19, 2004, detailing its findings of facts and conclusions of law. A detailed procedural history of this matter prior to appeal is set forth in that Order.

1



the Fourth Circuit directed the Court to make findings, "with the benefit of briefing from the parties." *Id.* at 483.

Upon remand, the State of North Carolina filed a Motion for Return of Property pursuant to 18 U.S.C. § 981, Rule (E)(5)(c) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rule of Criminal Procedure 41 and the Court's general equity jurisdiction. Matthews filed a response and the State has replied. On May 17, 2005, a hearing was held before the Court. The matter on remand is now ripe for ruling.

## BACKGROUND

This case centers around the lawful ownership of North Carolina's original copy of the Bill of Rights. In 1865, North Carolina's original copy of the Bill of Rights was maintained by the State of North Carolina in the State Capitol building. At some time during the occupation of the Capitol building by Union Soldiers during the Civil War, North Carolina's original copy of the Bill of Rights was stolen. The historical records indicate it was taken by a soldier from Ohio.

Subsequently, in or around 1866, the Bill of Rights was purchased by Charles A. Shotwell.[2] When the State of North Carolina became aware that Mr. Shotwell possessed the document, several attempts were made to negotiate its return. However, Mr. Shotwell refused to return the document to the State without compensation. The State of North Carolina rejected Mr. Shotwell's offer to purchase the document because it considered the document to be the stolen property of the State. Thereafter, the document's location was unknown to the State for

---

[2] In describing how he came to possess the document, Mr. Shotwell stated:

> I was living at Troy, O., at the close of the war, thirty-two years ago. I got it off a soldier in the Ohio regiment. I believe it cost me $5. He took it from the State House at Raleigh, N.C. when that place was pillaged by Sherman's army.

*Stolen Historic Relic*, The News and Observer, June 10, 1897.

2
Case 5:03-cv-00204-BO   Document 120   Filed 08/04/05   Page 2 of 9

approximately seventy years.

In the early 1990's, Wayne Pratt, a Connecticut antiques dealer, became aware that North Carolina's original copy of the Bill of Rights might be available for purchase. Mr. Pratt engaged in negotiations with members of the Shotwell family until his company, Wayne Pratt Incorporated ("WPI") purchased the document for $200,000 in 2000.

Even before WPI acquired the Bill of Rights from the Shotwell family, Mr. Pratt, working with John L. Richardson, a Washington, D.C. attorney, began seeking purchasers for the Bill of Rights. In October 1995, Richardson contacted North Carolina's Secretary of Cultural Resources regarding the State's interest in purchasing its original copy of the Bill of Rights. The State informed Richardson that public funds could not be used to purchase stolen public property and the location of the document again became unknown to the State.

In March 2003, North Carolina Officials were contacted by representatives of the State of Pennsylvania and the National Constitution Center in Philadelphia, Pennsylvania, concerning an overture they had received from Pratt, identified only as an antiques dealer, to sell an original copy of the Bill of Rights. North Carolina officials were advised that an authentication showed the document was North Carolina's original copy.

On March 18, 2003, the Federal Bureau of Investigation, acting in concert with the National Constitution Center, carried out an undercover operation in Pennsylvania posing as buyers to recover the Bill of Rights from Pratt and WPI. In furtherance of the undercover operation, on March 20, 2003, this Court issued a seizure warrant authorizing the United States Marshal to seize the Bill of Rights. At the time the document was seized, it had just been brought into the room by a courier working for Richardson. After it was seized, the Bill of Rights was turned over to the United States Marshal for the Eastern District of North Carolina

and remains in the custody of the Marshal pending resolution of this matter.

## ANALYSIS

As mentioned above, the sole issue before the Court on remand from the Fourth Circuit is to determine who should receive possession of the Bill of Rights in light of the government's voluntary dismissal. As mandated by the Fourth Circuit, this Court is obliged to determine how to return the parties in this action to the appropriate *status quo ante*.

### Matthews' Jurisdiction and Venue Challenges

In briefing the issue before the Court, in addition to arguing the merits, Matthews asserts that this Court lacks jurisdiction to make any determination with respect to the return of the document. Although phrased as a jurisdictional attack, the substance of Matthews' argument appears to challenge whether this Court is the appropriate venue to hear the matter. In support, Matthews cites to Fed. R. Crim. Proc. 41(g) which states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized." Relying upon this rule, Matthews claims this Court cannot determine the State's pending motion because it was filed in an improper district. Matthews is simultaneously seeking return of the property in an action he filed in the Eastern District of Pennsylvania on April 4, 2005, after the matter was remanded to this Court by the Fourth Circuit.

Matthews' attack on this Court's jurisdiction to return the parties to the *status quo ante* is without merit. As an initial matter, in its decision, the Fourth Circuit mandated this Court to make factual findings so as to determine how to restore the parties to the *status quo ante*. Generally, "once a case has been decided on appeal and a mandate issued, a lower court may not deviate from that mandate but is required to give full effect to its execution." *Invention*

*Submission Corp. v. Dudas*, 413 F.3d 411 (4th Cir. 2005) (citing *Stamper v. Baskerville*, 724 F.2d 1106 (4th Cir. 1984)).³ Accordingly, pursuant to the mandate rule, this Court has jurisdiction.

Furthermore, despite Matthews' argument, there is clear statutory authority providing that venue is proper in this Court. Title 18 U.S.C. § 981 specifically states that "[a]ny motion for the return of property seized under this section shall be filed *in the district court in which the seizure warrant was issued* or in the district court for the district in which the property was seized." 18 U.S.C. § 981(b)(3) (emphasis added). This Court entered its Order authorizing the arrest warrant against the Bill of Rights pursuant to 18 U.S.C. § 981.⁴ Therefore, the return of the property may

---

³ This principle is referred to as the "mandate rule" and is a more powerful version of the law of the case doctrine. *Invention Submission Corp. v. Dudas*, 413 F.3d 411 (4th Cir. 2005). The rule is based on "the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system." *Id.* (citing 18B Charles Alan Wright, Arthur B. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4478.3 (2d. ed. 2002)).

⁴ Furthermore, the Court was within its authority to issue the warrant under 18 U.S.C. § 981. Section 981(a)(1)(c) provides a warrant may be issued for property which constitutes, or is derived from proceeds traceable to any offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7). Section 1956(c)(7)(A) defines "specified unlawful activity" as any offense listed in 18 U.S.C. § 1961(1). Among the various criminal code provisions listed in Section 1961(1) are 18 U.S.C. § § 2314 and 2315 which criminalize the interstate transportation of stolen property and the possession or selling of such items. In issuing the warrant, the Court found probable cause that, as the government asserted, the Bill of Rights was a product of violations of 18 U.S.C. §§ 2314 and 2315 18 U.S.C. § 981(b)(3).

Because the Bill of Rights was not seized within this district, in issuing the warrant the Court rested exercised its authority pursuant to 18 U.S.C. § 981(b)(3) which states:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state in accordance with any treaty or other international agreement.

Under Section 1355(b)(1)(a), a forfeiture action may be brought in the district in which any of the

be decided in this Court pursuant to the clear provisions of § 981(b)(3).

Status Quo Ante

Having determined this Court has jurisdiction and that venue is proper, the Court now directs its attention to determining how to return the parties to the *status quo ante* in this case. As stated by the Fourth Circuit, a voluntary dismissal without prejudice "'operates to leave the parties as if no action had been filed at all.'" *In re Matthews*, 395 F.3d at 480 (quoting *Dove v. CODESCO*, 569 F.2d 807, 809 n.3 (4th Cir. 1978)). At oral argument before the Fourth Circuit and at the hearing held before the Court, the parties suggested two potential times that could serve as the *status quo ante*: (1) the time immediately prior to the seizure of the Bill of Rights; or (2) the time between when the Bill of Rights was seized, but before the action was commenced.

The United States suggests that the proper *status quo ante* in this matter is the time after the seizure, but before the Complaint was filed. To reach this conclusion, the Court would be required to take an untenable position regarding the position of the parties prior to the commencement of this suit. If the United States had no plans to institute a forfeiture proceeding to return the document to its lawful possessor, no seizure warrant would have issued. The United States is not free to seize property without some legal and justifiable purpose. Here, the United States was granted the authority to seize the document in anticipation of a lawsuit that would return the document to its lawful possessor. The United States was required to come before this Court and present sufficient evidence to support probable cause that the document was stolen property that it had a right to seize via forfeiture. The commencement of a forfeiture action was

---

acts or omissions giving rise to the forfeiture occurred. At the time the warrant was issued, the Court found probable cause the document is North Carolina's original copy of the Bill of Rights which was stolen from Raleigh, North Carolina. Accordingly, the requirements of Section 1355, and therefore, 18 U.S.C. § 981(b)(3) are satisfied.

a necessary component of the Court's decision to enter a seizure warrant. Because the issuance of the seizure warrant and the commencement of the forfeiture action are inextricably intertwined, it would be contrived to divorce them and place the *status quo ante* post-seizure but pre-complaint.

In contrast, returning the parties to the pre-seizure *status quo ante* places them in the position they would have occupied but for the filing of the lawsuit, upon which the warrant was predicated. Accordingly, the Court holds that the moment in time immediately prior to the seizure of the document by federal agents most accurately represents the position of the parties prior to the filing of this lawsuit. Up to that point, the parties' positions had not been altered by the actions of the government, and therefore, is the appropriate *status quo ante* in this case.

Having determined the proper time to establish *status quo ante* in this matter, the Court is now charged with determining to whom the document should be returned.[5] Black's Law Dictionary defines possessory interest as "the present right to control property, including the right to exclude others, by a person who is not necessarily the owner." *Black's Law Dictionary*, 8th Edition (2004). The Court's aim is to return the Bill of Rights to the party who has the superior possessory interest, considering the relative positions of the parties as they were at the time of the *status quo ante* and any intervening events which may have impacted those interests. Although a courier had actual possession of the document in the moments just prior to the seizure, the Bill of Rights was under the constructive possession of Richardson on behalf of WPI.

The Court finds that, considering only the superior possessory interest at the time immediately proceeding the seizure, the document would be returned to Richardson. However,

---

[5] Because the Court lacks jurisdiction to determine which of the parties has the superior ownership interest, it must only determine who should presently possess the document.

in remanding the matter to this Court, the Fourth Circuit stated, "we believe that the district court may properly consider the Pratt assignment in determining the pre-seizure *status quo ante*." *In re Matthews*, 395 F.3d at 484. The Court agrees that the effect of the assignment of interest on the possessory rights of the parties, if any, must be considered.

On September 10, 2003, Richardson, Wayne Pratt, and WPI quitclaimed any interest they had in the Bill of Rights to the State of North Carolina. In considering the effect of the assignment, the Court recognizes two salient facts. First, neither Richardson, Pratt, or WPI, presently, or at any time, contest the validity of the assignment of their interest in the Bill of Rights to the State of North Carolina. Second, the assignment was a distinct legal transaction from the civil forfeiture proceedings, the validity of which is not dependant upon the existence of the forfeiture proceedings. Therefore, any interest which Richardson, Pratt and WPI has in the Bill of Rights, including any possessory interest, passed to the State of North Carolina on September 10, 2003, and was not affected by the voluntary dismissal.

Finally, the Court addresses Matthews' claim that he also has a possessory interest in the document. Matthews bases this claim primarily on his assertion that he provided one-half of the money used to purchase the Bill of Rights from Charles Shotwell's granddaughters. However, Matthews' claim to a possessory interest in the document is not supported by the record. Most significantly, his argument is undermined by his own statements. The September 10, 2003 Objection to the United States' Motion to Dismiss filed by Matthews concedes that "Matthews never physical [sic] possessed the defendant [Document]" (Matthews Objection at 1-2). Matthews also states repeatedly in his deposition that he was merely a "passive investor" and that he "never had possession" of the document. (Matthews Deposition, Sept. 4, 2003). These statements clearly show that despite any ownership interest, Matthews cannot demonstrate a

basis for a possessory interest in the document at the time of the *status quo ante*.

Accordingly, based on the evidence presented in the record, the Court finds that returning the document to Richardson would satisfy its duty to return the parties to the *status quo ante*. Because Richardson, Pratt, and WPI, have quitclaimed any interest in the Bill of Rights to the State of North Carolina, the State now stands in their position, holding the superior possessory interest in the Bill of Rights. This Order does not affect the parties' ownership claims.

## CONCLUSION

For the reasons stated above, the United States Marshal for the Eastern District of North Carolina, the present custodian of the document, is hereby ORDERED to return possession of the copy of the Bill of Rights to the State of North Carolina by immediately delivering it to the Governor of North Carolina or his legal designee. Any other issues pending before the Court are rendered moot.

SO ORDERED.

This the 4 day of August 2005.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE